T.C. Summary Opinion 2011-67

UNITED STATES TAX COURT

KEVIN E. AND SONDRA WARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16637-09S.              Filed June 8, 2011.

Kevin E. Ward and Sondra Ward, pro sese.

<u>Janice Bennett Geier</u>, <u>Kimberly L. Clark</u>, and <u>Aimee R. Lobo-
Berg</u>, for respondent.

VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code (Code) in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

[1]  Unless otherwise indicated, all section references are to
the Code in effect for the year in issue, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined an $8,925 deficiency in petitioners' 2005 Federal income tax and a $1,785 accuracy-related penalty under section 6662(a). After concessions,[2] the issues for decision are whether petitioners are entitled to a $25,000 Schedule C expense deduction for business use of their car and whether petitioners are liable for the section 6662 accuracy-related penalty.

Petitioners resided in Idaho when the petition was filed.

## Background

In 2005 petitioner Sondra Ward (Mrs. Ward) worked as a real estate agent for Century 21 Advantage in Idaho. Her job duties (e.g., showing properties, networking, etc.) required her to do an extensive amount of driving. Mrs. Ward drove a 1996 Audi for most of 2005.[3] On December 21, 2005, petitioners purchased a 2006 BMW X5 (the BMW) for $49,431.50, which included $2,353.50

---

[2] The parties agree that the loss claimed on Schedule E, Supplemental Income and Loss, from Ward Insurance, Inc., reported on petitioners' return should be $84,197. Petitioners concede that Schedule E depreciation recapture should be increased by $11,951 and the $10,320 Schedule E depreciation expense reported on their return should be reduced by $747. Petitioners also concede that they are not entitled to any portion of the $49,431 rent/lease expense reported on Schedule C, Profit or Loss From Business, on their return.

[3] Petitioners did not keep a mileage log for the Audi or claim a mileage deduction for the Audi in 2005.

for Idaho sales tax, and $208 for State title fees and dealer documentation fees.[4]  Petitioners placed the BMW into service for Mrs. Ward's real estate business on December 21, 2005, the same day it was purchased.  Petitioner Kevin E. Ward (Mr. Ward) drove the BMW on occasion in 2005 as well.  The BMW had 66 miles on it when petitioners drove it off the lot and 1,111.7 miles at the end of the year; petitioners drove the BMW 1,045.7 miles from December 21 to 31.

Mrs. Ward concentrated most of her business in Bonneville, Jefferson, and Bingham Counties, an area covering over 5,000 square miles.  She sold 33 properties in 2005.[5]

Petitioners claimed a Schedule C depreciation expense for the BMW of $2,349 on their Form 1040, U.S. Individual Income Tax Return, for 2005.  During the examination of petitioners' 2005 return, petitioners first raised the issue that they are entitled to a $25,000 section 179 expense deduction and a $1,099 depreciation deduction for the BMW in lieu of the deduction claimed on their return.

On November 19, 2007, petitioners provided to the revenue agent assigned to the audit a mileage log for the BMW with three

---

[4]  Petitioners did not sell or trade in the Audi when they purchased the BMW.

[5]  It is not clear whether Mrs. Ward sold any of the 33 properties during the 11-day period from Dec. 21 to 31, 2005.

entries for 2005 totaling 47 miles allocated to personal use.[6] The log had no entries with a business use purpose and zero miles were allocated to business use. On December 11, 2007, petitioners provided a computer printout of Mrs. Ward's mobile phone daily calendar covering December 21 through 31, 2005 (the phone calendar). After printing out the phone calendar Mrs. Ward added handwritten mileage amounts for most of the entries, which are almost exclusively for Mrs. Ward's business appointments and other business and/or networking obligations. The revenue agent determined that the business use percentage of the BMW for 2005 was 42.7 percent. As a result, the revenue agent allowed a Schedule C depreciation expense for the BMW of $528. Respondent issued a notice of deficiency to petitioners on May 1, 2009.

Discussion

## I. Vehicle Expense

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records that

---

[6] Petitioners listed the following dates and descriptions for these personal use entries:

```
Dec. 25    Church
Dec. 25    Mom & Dad Ward
Dec. 31    Town - grocery & new year stuff
```

are sufficient to determine their correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

When property is used in a trade or business or held for the production of income, the taxpayer may be allowed a depreciation deduction. Secs. 161, 167. Alternatively, the cost of property acquired by purchase for use in the active conduct of a trade or business may be expensed under section 179 during the year that the property was placed in service if the requirements of that section are satisfied. If the property is used for both business and other purposes, then the portion of the cost that is attributable to the business use is eligible for expensing under section 179, but only if more than 50 percent of the use is for business purposes (the predominant use requirement). See sec. 1.179-1(d), Income Tax Regs. Moreover, to claim a section 179 deduction for "listed property", which is defined in section 280F(d)(4) to include any passenger automobile, the taxpayer must satisfy the strict substantiation requirements of section 274(d). See Whalley v. Commissioner, T.C. Memo. 1996-533; see also sec. 280F(d)(1); sec. 1.179-1(d)(3), Income Tax Regs. Section 274(d) requires the taxpayer to substantiate the amount, time, place, and business purpose of these expenditures and to provide adequate records or sufficient evidence to corroborate his own statement. See sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). In the absence of adequate

records to substantiate an element of an expense, a taxpayer may establish an element by "his own statement, whether written or oral, containing specific information in detail as to such element", and by "other corroborative evidence sufficient to establish such element."  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).  However, neither taxpayers nor the Court may estimate permissible deductions that do not satisfy the strict substantiation requirements of section 274(d), which supersedes the doctrine found in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969); Solomon v. Commissioner, T.C. Memo. 2011-91.

Petitioners contend that they are entitled to a section 179 deduction for the BMW because it was used predominantly for business purposes in 2005.  Respondent argues that the deduction is not permitted because petitioners have not adequately substantiated the business use of the BMW and fail to meet the predominant use requirement.

At trial petitioners introduced into evidence the mileage log,[7] Mrs. Ward's phone calendar, and maps of the area in which Mrs. Ward works.  The phone calendar did not include mileage

---

[7] As discussed supra, the mileage log includes no entries with a business use purpose and allocates zero miles to business use for 2005.

amounts on the original printout.  Instead, the mileage amounts were handwritten and added after the calendar was printed in 2007; thus, they were not contemporaneously recorded.  Mrs. Ward testified that she arrived at the mileage totals by reading the odometer at the time of the appointments and that she may have written the mileage totals down earlier and moved them to the calendar later.  However, she provided no other written evidence of the mileage amounts.  The phone calendar also did not include the addresses of the homes she showed to clients.  The entries included vague descriptions such as "Sweet showing", "Drop off See's Candy and Calendars", "Flyers to all listings", and "Show mclane invest prop".  Accordingly, petitioners have not maintained adequate records.

Mrs. Ward testified in depth about her overall job duties and specific appointments during the 11-day period at the heart of this matter.  She also showed the Court maps of her working area and distances from her home in Idaho to the locations of several of her appointments.  However, she produced no evidence to corroborate her statements about the specific locations of her appointments in 2005 (e.g., addresses of listings, emails from clients referring to specific listings, etc.), or where she was driving from.[8]  Furthermore, in the absence of adequate records

---

[8]  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985), states, in pertinent part:

(continued...)

and more precise evidence, we must conclude that Mrs. Ward's mileage totals, which were written on the phone calendar in 2007 and included miles driven around the areas where the listings were located, were best estimates, which cannot be the basis for a deduction under section 274.

While we do not doubt that Mrs. Ward used the BMW for business purposes in 2005, she has not met the strict substantiation requirements of section 274. Accordingly, respondent's determination with respect to the section 179 deduction for the BMW is sustained.

## II. Accuracy-Related Penalty

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) due to negligence or disregard of rules or regulations or (2) attributable to a substantial understatement of income tax. See sec. 6662(b). "Negligence"

---

[8](...continued)
A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence. * * *

includes any failure to make a reasonable attempt to comply with the provisions of the Code or to exercise ordinary care in the preparation of a return, and "disregard" means any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. A substantial understatement of income tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. See sec. 6662(d)(1)(A).

Respondent determined that some or all of the underpayment of petitioners' tax for 2005 is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax. Respondent calculated the 20-percent penalty on the entire amount of the deficiency.[9] However, in the notice of deficiency respondent listed only "Sch C1 - Rent/Lease - Other Business Property" as an adjustment to which the accuracy-related penalty applies.[10] Thus, respondent should have calculated the 20-percent penalty only on the amount of the deficiency resulting from petitioners' improper deduction for rent expense. Petitioners have conceded this adjustment as well as the resulting penalty. Accordingly, we sustain respondent's

---

[9] Respondent applied the 20-percent penalty to the $8,925 deficiency determined in the notice.

[10] This adjustment increased petitioners' taxable income by $49,431.

determination that a penalty applies for the corresponding portion of the underpayment.

The penalty shall not be imposed on the portion of the underpayment due to any other adjustment, including the additional adjustments that petitioners have conceded and the adjustment discussed herein.  As part of the Rule 155 computations, respondent shall recalculate the 20-percent penalty and apply it only to the portion of the underpayment resulting from the adjustment for the Schedule C rent expense.

<u>Decision will be entered under Rule 155</u>.